UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SEAN T. MALONEY,                                    Case No.: 6:13-CV-00821-AC

                Plaintiff,                                OPINION AND
                                            ORDER

     v.

COMMISSIONER of Social Security,

                Defendant.

_____

ACOSTA, Magistrate Judge:

*Introduction*

    Plaintiff Sean T. Maloney ("Maloney") filed this action under section 205(g) of the Social

Security Act (the "Act") as amended, 42 U.S.C. § 405(g), to review the final decision of the

Commissioner of Social Security (the "Commissioner") who denied him: 1) social security disability

and disability insurance benefits, as well as 2) supplemental security income.  For the reasons set

forth below, the court remands the decision of the Commissioner for further consideration.

## Procedural Background

On September 28, 2009, Maloney filed the two aforementioned separate applications for benefits. In both, Maloney alleged an onset date of January 3, 2007, on the basis of bipolar disorder. The application was denied initially, on reconsideration, and by Administrative Law Judge Laura Valente ("ALJ"), after a hearing. The Appeals Council received additional evidence in the form of a brief from Maloney's attorney, a psychological report from Gerald Fleisher, Ph.D., and progress notes from J. Wayne Mathews, M.D., but denied review, making the ALJ's decision the final decision of the Commissioner.

## Factual Background

Maloney is thirty-seven years old and earned a college degree in business. His past relevant work experience includes fast food worker, dishwasher, cashier, and retail sales clerk. Maloney has not been involved in a successful work attempt since January 3, 2007. Maloney last met the insured status requirements entitling him to benefits on March 31, 2011.

## Standard of Review

The Social Security Act provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). The burden of proof to establish a disability rests upon the claimant. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), *cert. denied*, 519 U.S. 881 (1996). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). An individual

{BJT}

will be determined to be disabled only if there are physical or mental impairments of such severity that the individual is not only unable to do previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing past-relevant work. If the claimant is able to perform work which he or she has performed in the past, a finding of "not disabled" is made and benefits are denied. 20 C.F.R. § 404.1520(e).

If the claimant is unable to do work performed in the past, the Commissioner proceeds to the

fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden then shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Distasio v. Shalala,* 47 F.3d 348, 349 (9th Cir. 1995). The claimant is entitled to benefits only if he or she is not able to perform other work. 20 C.F.R. § 404.1520(f).

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g) (2006); *Batson* v. *Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Robbins* v. *Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki* v. *Shalala,* 999 F.2d 1411, 1413 (9th Cir. 1993).

The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins,* 466 F.3d at 882; *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). Thus, where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld, even where the evidence can support either affirming or reversing the ALJ's conclusion. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). In determining a claimant's residual functioning capacity, an ALJ must consider all relevant evidence in the record, including, *inter alia,* medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883 (citing Social Security Ruling ("SSR") 96-8p,

1996 WL 374184, at *5; 20 C.F.R. §§ 404.1 545(a)(3), 416.945(a)(3); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). However, the reviewing court must consider the entire record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

### Summary of the ALJ's Decision

At step one, the ALJ found that Maloney had not engaged in substantial gainful activity since January 3, 2007. (Admin. R. at 15.) At step two, the ALJ found Maloney to have severe impairments of mood disorder and substance addiction disorder. (Admin. R. at 15.) She further found the record established the impairments were medically determinable and that they caused more than minimal functional limitations in the performance of basic work activities. (Admin. R. at 15.) At step three, the ALJ found these impairments did not meet or equal a listed impairment. (Admin. R. at 16.) Next[1], the ALJ made a residual functional capacity ("RFC") determination, considering Maloney to be capable of performing a full range of work at all exertional levels, but also outlining non-exertional limitations on that capability. (Admin. R. at 17.) The Social Security Administration defines RFC as, "[A]n administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, at *5. The non-exertional limitations identified by the ALJ were:

> . . . the claimant has sufficient concentration to understand, remember, and carry-out

---

[1] The court approximates which step in the five-step sequential analysis the ALJ took at each part of her decision, but because the ALJ's findings are numbered to seven, the ALJ's precise method is not clear.

simple routine tasks of the kind found in unskilled work with SVPs up to 2; has
sufficient persistence and pace work superficially with general public (superficial is
defined as not having to respond to the demands/requests of the public but can refer
those demands/requests to others to respond while working in the same room or
vicinity of the general public; greetings are superficial); has sufficient persistence and
pace to work in coordination with a small group of coworkers (1 to 3 people); and
has sufficient persistence and pace to make simple workplace decisions and to handle
a few workplace changes.

(Admin. R. at 17.)  Between the third and fourth steps, the ALJ found:

After careful consideration of the evidence, the undersigned finds that the claimant's
medically determinable impairments could reasonably be expected to cause the
alleged symptoms; however, the claimant's statements concerning the intensity,
persistence and limiting effects of these symptoms are not credible for the reasons
discussed below.

(Admin. R. at 19.)

The ALJ then discussed five reasons for finding Maloney not credible. First, the ALJ

determined that Maloney's mental symptoms and limitations were not substantiated by the medical

record to the degree Maloney had alleged.  (Admin. R. at 19.)  Here, the ALJ pointed out those

occasions Maloney's medical records confirmed he is a chronic user of methamphetamine, including

Maloney's admissions to substance use and abuse; Maloney testing positive for drug use; healthcare

provider suspicion related to Maloney's substance use and abuse; and the likelihood of connections

between Maloney's symptoms and his substance use and abuse. (Admin. R. at 19-23.) The ALJ also

attempted to identify times during which Maloney's condition was stable, and to distinguish them

from the times he was using drugs.  (Admin. R. at 19-23.)

Second, the ALJ determined the record evidenced that Maloney had engaged in activities

showing a greater degree of mental functioning than he had alleged.  (Admin. R. at 23.)  As

examples, the ALJ cited evidence of Maloney's social abilities, and his ability to function

independently at home, financially, and in commuting. (Admin. R. at 23.)

Third, the ALJ determined that Maloney made inconsistent disclosures regarding his substance abuse, which further undermined his credibility. (Admin. R. at 23.) Here, the ALJ highlighted evidence of Maloney's drug use throughout the medical record to support her credibility finding. (Admin. R. at 23-25.) The ALJ concluded her reasoning stating:

> Given the evidence of ongoing drug and alcohol abuse throughout the relevant period without clear periods of sobriety, and given the lack of understanding of the true extent of the abuse due to the inconsistent reporting by the claimant, the undersigned finds the ongoing substance abuse clouds the diagnostic picture of the claimant's mental impairment and undermines the credibility of his alleged mental symptoms and limitations.

(Admin. R. at 25.)

Fourth, the ALJ determined that Maloney had made inconsistent statements regarding his alleged mental impairments and limitations. (Admin. R. at 25.) Here, the ALJ reasoned, in part, "[Maloney] had admitted to recent methamphetamines use while continuing to use alcohol occasionally during the evaluation with Dr. Dees" and "admitted that his problems with sustaining employment in the past were due to his drug use." (Admin. R. at 26.)

Fifth, the ALJ determined that Maloney may have been motivated by secondary gain for disability benefits. (Admin. R. at 26.) Here, the ALJ noted, "Dr. Dees indicated the claimant appeared to be at risk for diverting funds to purchase drugs based on his past behavior." (Admin. R. at 26.)

In considering the medical opinion evidence, the ALJ accorded significant weight to the opinion of state agency psychological consultant Dr. Kent Reade ("Dr. Reade"). (Admin. R. at 26.) Dr. Reade had conducted a mental assessment of Maloney. (Admin. R. at 26.) In Dr. Reade's

{BJT}

opinion, Maloney could carry out routine work of less than one-to-three steps and maintain a schedule and complete normal work weeks, but could not deal with the stress associated with direct customer service. (Admin. R. at 26.) Also, Dr. Reade opined that Maloney required a predictable work setting. (Admin. R. at 26.) Finally, the ALJ noted Dr. Reade's assessment that Maloney "tended to be vague and guarded" when talking about his substance abuse. (Admin. R. at 27.)

The ALJ also accorded significant weight to Dr. Wayne Dees's ("Dr. Dees") opinion. (Admin. R. at 27.) Dr. Dees conducted a consultative psychological evaluation of Maloney in February 2010. (Admin. R. at 27.) Dr. Dees opined that Maloney did not have any significant cognitive functioning limits, had the ability to complete simple instructions, and to keep normal pace and persistence. (Admin. R. at 27.) Further, in Dr. Dees's opinion, Maloney was moderately impaired in his ability to learn, but this was adequately accommodated in Maloney's residual functioning capacity. (Admin. R. at 27.) The ALJ also recognized Dr. Dees's opinion that Maloney's "consistent methamphetamine abuse without stable period of sobriety made differentiation of diagnoses difficult . . . ." (Admin. R. at 27.) Finally, the ALJ accorded Dr. Dees's opinion on Maloney's judgment and insight being poor, and Maloney's Global Assessment of Functioning Scale ("GAF Scale") score of 45-50 little weight because those aspects were "inconsistent with the totality of evidence in the record." (Admin. R. at 27.) The GAF Scale is a numeric scale mental health clinicians and physicians use to subjectively rate a patient's social, occupational, and psychological functioning. According to the ALJ, that "totality of evidence" included:

> . . . the contemporaneous evidence of ongoing stabilization of symptoms with medication, generally mild clinical findings in the [Seattle Mental Health] treatment notes, the claimant engaging in activities showing greater mental functioning ability,

and the lack of clarity on the extent of the claimant's substance abuse due to misreporting as all discussed earlier.

(Admin. R. at 27.) The ALJ also considered the medical opinions of Dr. Cassandra Clark, who conducted a "one-time check-box" Department of Social and Health Services mental evaluation. (Admin. R. at 27.) In Dr. Clark's opinion, Maloney was markedly impaired in his ability to perform routine tasks without undue supervision, and severely impaired in his ability to communicate and perform effectively with limited public contacts and maintain appropriate behavior in a work setting. (Admin. R. at 27.) The ALJ accorded little weight to Dr. Clark's opinions because they were inconsistent with the totality of the evidence in the record, including:

> . . . problems with treatment compliance, stabilization of symptoms when compliant with medication, lack of chemical dependency treatment despite extensive substance abuse, evidence of ability to engage in activities showing greater mental functioning ability, and the lack of clarity on the extent of the claimant's substance abuse given his inconsistent reporting as all detailed earlier.

(Admin. R. at 27.) The ALJ's other reasons for according little weight to Dr. Clark's opinions included that the ALJ believed the doctor had relied on Maloney's subjective complaints as well as other statements he had made which were unsubstantiated by and inconsistent with the record. (Admin. R. at 27.) Dr. Clark also believed Maloney's symptoms were more consistent with schizophrenia than an amphetamine psychosis, which led her to a dual diagnosis. (Admin. R. at 27.) The ALJ accorded this dual diagnosis little weight:

> [T]he lack of clear periods of sobriety in the record and the claimant's misreporting of his substance abuse . . . results in lack of understanding of the full extent of the substance abuse and clouds the diagnostic picture, as well as in turn, undermines Dr. Clark's opinion.

(Admin. R. at 27-28.) Instead, the ALJ favored Dr. Dees's opinion that Maloney's consistent methamphetamine abuse without a stable period of sobriety made differentiation of diagnoses

difficult. (Admin. R. at 28.) She found Dr. Dees's opinion more consistent with the record as a whole. (Admin. R. at 28.)

Additionally, the ALJ accorded little weight to the assessments of multiple examining psychiatrists who treated Maloney in emergency room settings from 2007 to 2009. (Admin. R. at 28.) The ALJ discounted the opinions of these psychiatrists:

> . . . because they were given while the claimant was using drugs that were contributing to the claimant's symptoms, and because they are inconsistent with the evidence of stabilization with medical compliance and the claimant engaging in activities showing greater mental functioning than alleged as discussed earlier. Moreover, these were one-time assessments where the examining psychiatrist did not have the benefit of reviewing the claimant's longitudinal treatment record.

(Admin. R. at 28.)

Upon consideration of opinions offered by "other sources", the ALJ discounted the opinion of Maloney's case manager, John-Paul Sharp. In Mr. Sharp's opinion, it was "very clear that even without the ingestion of substances, Mr. Maloney suffer[ed] from a severe mental condition that impair[ed] his ability to interface with reality effectively or socialize appropriately." Mr. Sharp further opined that even when Maloney abstained from drugs, he "frequently exhibit[ed] extremes of paranoia and delusions that [we]re debilitating to his daily functioning." (Admin. R. at 28.) The ALJ again accorded little weight to these opinions because she saw them as inconsistent with the totality of the evidence, including aspects relating to Maloney's "chemical dependency" and "substance abuse." (Admin. R. at 28.) The ALJ again reiterated that she favored Dr. Dees's opinion. (Admin. R. at 29.) The ALJ then discounted testimony from Maloney's father on similar grounds. (Admin. R. at 29.)

Thus, at step four, the ALJ found Maloney's functional limitations were adequately addressed

{BJT}

by the established residual functional capacity assessment and found that Maloney was capable of performing his past relevant work as a dishwasher. (Admin. R. at 29.)  At step five, the ALJ concluded that Maloney was capable of "making a successful adjustment to other work that exists in significant numbers in the national economy." (Admin. R. at 31.)  Ultimately, the ALJ decided Maloney was "not disabled under [s]ection 1614(a)(3)(A) of the Social Security Act." (Admin. R. at 31.)

*Discussion*

Maloney asserts the ALJ erred by: 1) failing to evaluate the severity and functional impact of all of Maloney's impairments before factoring out the limitations arising from his substance use; 2) ignoring the impact of Maloney's impairments on his functioning in determining his credibility; and 3) improperly assessing witness' credibility in light of later-submitted evidence.  Maloney asks the court to remand this action to the Commissioner for further proceedings so the ALJ can "re-evaluate the medical evidence and [Maloney's] credibility without considering the impact of his drug use." (Pl.'s Brief at 17.) The Commissioner admits the ALJ erred in considering the claimant's drug and alcohol abuse in the initial sequential analysis, but contends any error related thereto was harmless. The Commissioner also argues that the ALJ otherwise considered the evidence presented to her in accordance with the terms of the Act and the related regulations, and that her decision should be affirmed.

I.  Drug Abuse and Alcoholism Analysis

Maloney argues, and the Commissioner agrees, that the ALJ improperly considered the effects of Maloney's drug and alcohol abuse without first determining Maloney was disabled under the five-step inquiry. *See Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001). Maloney argues

this was harmful error in that it resulted in the ALJ rejecting "the opinions of Dr. Clark and Mr. Sharp, who had opined that Plaintiff's impairments would be disabling, notwithstanding his drug use." (Pl.'s Reply at 4.) The Commissioner argues this was harmless error because the ALJ assumed Maloney's bipolar disorder was disabling in determining that substance abuse was material to Maloney's "more serious symptoms." (Def.'s Memo at 4.) *See Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007).

The Contract with America Advancement Act of 1996 amended the Social Security Act and provides that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Under the Commissioner's regulations implemented to govern disability claims involving substance abuse, the ALJ must conduct a specific drug abuse and alcoholism analysis ("DAA Analysis"). 20 C.F.R. §§ 404.1535, 416.935. The ALJ must first conduct the standard five-step sequential evaluation without separating out the impact of drug addiction or alcoholism in order to determine whether a claimant is disabled. *Bustamante*, 262 F.3d at 955. If the ALJ finds the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with a second analysis under 20 C.F.R. §§ 404.1535 or 416.935. *Id.* If the ALJ finds the claimant is disabled, the ALJ must perform the sequential evaluation process a second time, conducting the DAA Analysis. *Id.* In the DAA Analysis, the ALJ separates the impact of plaintiff's drug abuse or alcoholism to determine if the claimant would still be found disabled if he or she stopped using drugs or alcohol. *Id.*; 20 C.F.R. § 416.935(b). If the remaining limitations would not be disabling, the claimant's substance abuse is material and benefits must be denied. *Parra*, 481 F.3d at 747-48.

The ALJ should have completed the five-step inquiry without attempting to determine the impact of Maloney's substance abuse on his other impairments, because an ALJ cannot consider the effects of substance abuse unless he or she finds a claimant disabled upon completing the initial five-step inquiry. As Maloney argues, the ALJ improperly rejected and accepted medical opinions and evidence from other sources referencing in each instance Maloney's substance abuse. (Pl.'s Brief at 10.) For example, the ALJ listed "consistent with the record as a whole" or "inconsistent with the totality of the record" as her justification for according significant or little weight to medical opinions and other evidence. As examples of what the "record as a whole" or the "totality of the record" included, the ALJ offered: 1) "the lack of clarity on the extent of the claimant's substance abuse due to misreporting"; and 2) the "lack of chemical dependency treatment despite extensive substance abuse." (Admin. R. at 27.)

Further, the ALJ gave little weight to a diagnosis by Dr. Cassandra Clark that Maloney's symptoms were more consistent with schizophrenia rather than amphetamine psychosis, stating:

> [G]iven the lack of clear periods of sobriety in the record and the claimant's misreporting of his substance abuse as discussed above, which results in lack of understanding of the full extent of the substance abuse and clouds the diagnostic picture, as well as in turn, undermines Dr. Clark's assessment. Greater weight is accorded to Dr. Dees' opinion that the claimant's consistent methamphetamine abuse without stable period of sobriety made differentiation of diagnoses difficult, which is more consistent with the record as a whole.

(Admin. R. at 28). The ALJ also, based in part on Maloney's substance use, accorded little weight to various GAF Scale scores assessed by examining psychiatrists during Maloney's visits to hospital emergency rooms. The ALJ wrote that she, "accord[ed] little weight to all these one-time assessments because they were given while the claimant was using drugs that were contributing to the claimant's symptoms, and because they are inconsistent with the evidence . . . ." (Admin. R. at

28.)

Additionally, the ALJ accorded little weight to the opinions of healthcare providers who do not qualify as "medical sources" under C.F.R. § 404.1513 on improper grounds. (Admin. R. at 28-29.) In addition to finding the opinions of John-Paul Sharp, "inconsistent with the totality of the evidence in the record" including substance abuse-related aspects, the ALJ again favored Dr. Dees's opinion. (Admin. R. at 29.) ("[T]he claimant's consistent methamphetamine abuse and lack of stable period of sobriety made differentiation of diagnoses difficult, which is more consistent with the record as a whole.") In discounting Mr. Sharp's opinion, the ALJ noted Mr. Sharp believed it was "very clear that even without the ingestion of substances, Mr. Maloney suffer[ed] from a severe mental condition that impair[ed] his ability to interface with reality effectively or socialize appropriately" and, even during periods of sobriety, "frequently exhibit[ed] extremes of paranoia and delusions that [we]re debilitating to his daily functioning." (Admin. R. at 28.)

Thus, the ALJ's decision demonstrates that she erroneously examined the effects of Maloney's substance abuse in the initial five-step sequential evaluation. In so erring, the ALJ failed to apply the Commissioner's regulations and the proper legal standards of the Ninth Circuit. *See* 20 C.F.R. §§ 404.1535(a), 416.935(a). *See also Bustamante*, 262 F.3d at 955.

The parties do not dispute that substance abuse is implicated in this disability proceeding, and that the ALJ failed to follow the dictates of the Commissioner's regulations and *Bustamante*. However, the two sides disagree as to the applicability of *Parra* to the instant facts and whether or not the ALJ's error was harmful. The Commissioner's harmless error argument fails for two reasons. First, it relies on *Parra*, which does not support that argument. Second, the Commissioner relies on the same type of substance-abuse-related evidence the ALJ was precluded by law from

considering in the initial sequential analysis.

The Commissioner argues that *Parra* renders the ALJ's failure in this case harmless error, while Maloney distinguishes *Parra* from these facts. (Def.'s Brief at 4; Pl.'s Reply at 3.) In *Parra*, a claimant sought judicial review of an ALJ's decision denying a claim for social security disability benefits and supplemental security income benefits. 481 F.3d at 745. The claimant had alleged disability due to alcoholism and bursitis. *Id.* The ALJ rejected the bursitis claim. *Id.* On the substance abuse claim, the ALJ found the claimant "disabled primarily due to heavy alcohol consumption and intoxication," and also that the claimant could have recovered from the "moderately severe but curable cirrhosis of the liver" if the claimant had quit drinking prior to 1999. *Id.* at 745-746. The ALJ also explicitly ruled the claimant must carry the burden of proving that his alcoholism was not a "contributing factor material to his disability." *Id.* at 746. Ultimately, the ALJ found the claimant ineligible for disability benefits because his disability would have resolved had the claimant quit drinking. *Id.* The ALJ's decision contained findings that were ambiguous and unclear as to whether he had properly conducted the full five-step analysis to determine whether a disability existed before conducting the DAA Analysis. *Id.* at 747. The Ninth Circuit found any error committed by the ALJ to be harmless because the ALJ "assumed that Parra's cirrhosis was disabling" in deciding his alcoholism was material to his cirrhosis. *Id.* at 747.

The analysis and outcome in *Parra* are distinguishable from the instant case. In *Parra*, the claimant's only "severe" impairment recognized by the ALJ was alcohol-related. Here, the ALJ recognized Maloney suffered from a "mood disorder" as well as "substance abuse disorder". Also, the ALJ in *Parra* used the DAA Analysis to explicitly find that the alcohol was a contributing factor material to his disability. The ALJ in the instant case did not make a similar explicit finding at any

Page 15 - OPINION AND ORDER                                    *{BJT}*

point, instead finding that: "the ongoing substance abuse clouds the diagnosis picture of the claimant's mental impairment and undermines the credibility of his alleged mental symptoms and limitations." (Admin. R. at 25.)

Further, while the ALJ did not clearly follow the required initial five-step analysis in outlining his findings in *Parra*, he instead assumed a disability and continued on with a DAA analysis. This assumption, key to the Ninth Circuit's harmless error determination in *Parra*, did not occur in this case. In *Parra* the court held that, "[b]ecause the DAA Analysis assumed Parra's cirrhosis was disabling, any error in arriving at that initial conclusion would not affect the ALJ's ultimate decision that Parra's alcoholism was material to his cirrhosis." *Parra*, 481 F.3d at 747. The ALJ here did not assume that Maloney's bipolar was disabling. Instead, she found Maloney's mental symptoms and limitations "not substantiated to the degree alleged" in discussing Maloney's credibility before she improperly considered his substance abuse during the initial sequential analysis and prior to any finding of disability. (Admin. R. at 19.) Thus, *Parra* does not support the Commissioner's harmless error argument.

Nor is there a basis to find the error harmless here. The Ninth Circuit has outlined "different formulations of the harmless error rule depending on the facts of the case and the error at issue", but has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). "In other words, in each case [the court] look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. The court cannot say the instant error was harmless, because the ALJ considered the same type of substance-abuse-related evidence which, by

law, she was precluded from considering in the initial sequential analysis. In effect, the Commissioner asks the court to apply the two different sequential analyses and weigh the evidence accordingly. The ALJ should have performed this function below and the court cannot do it on review. The United States Supreme Court has established that if an administrative agency commits an error of law and decides a case using an improper legal standard, the court cannot affirm the decision by applying the proper legal standard:

> [W]e emphasize[] a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

The rule particularly applies here, because the record shows that Maloney's substance abuse, when not separately analyzed, confused the nature and origin of his mental disorders. The ALJ repeatedly recognized that the disability determination was "cloud[ed]" or "difficult." (Admin. R. at 21, 25, 27, 28, 29.) She found that Maloney's consistent drug and alcohol abuse without "clear periods of sobriety . . . cloud[ed] the diagnostic picture of the claimant's mental impairment . . . ." (Admin. R. at 25.) The medical evidence disclosed that Maloney's condition and symptoms unavoidably implicated his drug use. Thus, in the event that Maloney's cumulative severe impairments are properly assessed and do constitute a disability, the disability determination could be decided in Maloney's favor.

Because *Parra* is distinguishable from the instant facts, and because Maloney's substance

abuse improperly factored into the ALJ's consideration of the evidence in rendering her decision, the court cannot say that the ALJ's error was harmless. For the reasons set forth below in section IV of this opinion, the court remands the decision of the Commissioner for further consideration.

II. Credibility Determinations

Maloney argues that the ALJ improperly found him not credible because the ALJ: 1) "improperly accepted or rejected reporting based on the perceived impact of Plaintiff's drug use"; 2) "isolated testimony and reports to his providers in evaluating the nature of Plaintiff's impairments"; 3) improperly "discounted . . . testimony as inconsistent with the longitudinal record . . ."; and 4) "erred in rejecting this evidence without considering Plaintiff's underlying paranoia and delusions (existing independent of his drug use) and how these behaviors would impact Plaintiff's ability to sustain work." (Pl.'s Brief at 14, 16.) Maloney argues that the "ALJ's credibility finding ignores significant evidence in the record and was not based on clear and convincing reasons." (Pl.'s Brief at 16.) The Commissioner responds, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, [the reviewing court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

When a medical impairment has been established, the ALJ must provide "specific, cogent reasons" to discredit a claimant's testimony. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (quoting *Lester*, 81 F.3d at 834). The ALJ must then "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where the ALJ did not find "affirmative evidence" the claimant was a malingerer, the "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*

The court need not rule on the validity of the ALJ's credibility finding because it has

remanded the case for further proceedings. *See James v. Apfel*, 174 F. Supp. 2d 1125, 1130 (W.D. Wash. 2001) ("Plaintiff contends that the ALJ committed additional errors in failing to properly evaluate the credibility of plaintiff . . . .  In view of the recommendation to remand this case for further proceedings it is not necessary to decide these issues at this time.  On remand the ALJ is to re-evaluate all of the issues and the evidence and make legally sufficient findings.")  On remand, the ALJ may again consider the effects of drug abuse and alcoholism in determining Maloney's credibility. *See Wake v. Comm'r of Soc. Sec.*, 461 F. App'x 608, 609 (9th Cir. 2011) ("The ALJ did not err by considering inconsistent statements about Wake's drinking history when assessing her credibility.") (citing *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999); *Thomas*, 278 F.3d at 959.)

III.  Evidence Submitted to the Appeals Council

Maloney submitted additional evidence to the Appeals Council with his Request for Review of the ALJ's decision.   (Admin. R. at 590-638.)   Maloney argues that a court-mandated psychological evaluation from 2003 by Dr. Gerald Fleischer "undermines the evidentiary basis for the ALJ's decision" and that the evidence therein "clarifies . . . the issues the ALJ relied on in finding Plaintiff not credible and in rejecting other evidence favorable to Plaintiff's claim." (Pl.'s Brief at 13.)  More specifically, Maloney argues that Dr. Fleischer's opinion bolsters that of Mr. Sharp and reinforces Maloney's credibility in such a way that, when considered "in conjunction with the other evidence in the record . . ." requires the court to remand the claim.  (Pl.'s Brief at 12.)  The Commissioner, in response, points to Ninth Circuit case law deeming "[m]edical opinions that predate the alleged onset of disability . . . of limited relevance." *Carmickle*, 533 F.3d at 1165.

The Ninth Circuit has held "when a claimant submits evidence for the first time to the

Appeals Council which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record . . ." *Brewes v. Comm'r, Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). Because the court has remanded the case for further proceedings, the ALJ must consider the record as a whole, including the 2003 evaluation from Dr. Fleischer. *Gardner v. Colvin*, 6:12-CV-00755-JE, 2013 WL 3229955 (D. Or. June 24, 2013), *adopted by, Gardner v. Colvin*, 2013 WL 3229955 (D. Or. June 24, 2013) ("Under the guidance of *Brewes* and related decisions, I conclude that this action should be remanded to the Agency so that an ALJ can determine whether Dr. Richardson's now final assessment, considered with the other evidence in the record as a whole, establishes that Plaintiff is disabled.")

IV. Remand

Because the court concludes the ALJ's decision must be remanded, it must next determine whether the matter should be remanded for further proceedings or for an award of benefits. The decision to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The court's decision turns on the likely utility of further proceedings. *Id.* at 1179. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Finally, "[w]here the Secretary is in a better position than this court to evaluate the evidence, remand is appropriate." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

Persuasive authority within the Ninth Circuit directs that when an ALJ errs in the manner the ALJ did in the instant case, the matter should be remanded to the Commissioner for further proceedings. *See Monan v. Astrue*, 377 Fed. Appx. 629 (9th Cir. 2010) (mem.) ("Even assuming that a finding of 'disabled' were clear based on the opinions of Dr. Belmont and Dr. Tromp, a remand would still be necessary in this case because the ALJ did not perform a proper drug and alcohol analysis . . . ." ) *See also Wiggins v. Colvin*, C13-657-TSZ, 2013 WL 5913384, *3 (W.D. Wash. Nov. 4, 2013) (citing *Bustamante*, 262 F.3d at 955) ("The matter thus should be remanded with direction that the ALJ complete the initial five-step sequential evaluation without separating out the impact of substance abuse.")

Thus, the court remands Maloney's case so that the ALJ may complete the entire initial five-step sequential evaluation, in accordance with the Commissioner's Regulations and Ninth Circuit precedent. If the ALJ finds Maloney disabled, only then should she evaluate whether Maloney would still be disabled when discounting the effects of his substance abuse. Accordingly, the court remands this matter for further proceedings.

### Conclusion

For the foregoing reasons, this case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this 5th day of August, 2014.

JOHN V. ACOSTA
United States Magistrate Judge

{BJT}